SANFORD, CHAMBERLAIN & ALBERS COMPANY et al. v.
L. M. EUBANKS et al.

(Filed 27 May, 1910.)

1. Deeds and Conveyances—Mortgages—Husband and Wife—Fraud —Bona Fide· Debt—Fraudulent Intent—Knowledge.

In an action brought by the creditors of the husband to set aside his mortgage to his wife, given to secure a loan of money made by the latter to the former, on the ground of fraudulent intent to delay or defeat his other creditors in the collection of their debt, the questions involved are whether the husband had the fraudulent intent and whether the wife had notice of it; and evidence of the latter that she had no knowledge or notice of her husband's unlawful purpose, is competent.

2. Same—Presumption—Burden of Proof.

When the husband makes a mortgage to his wife to secure a debt admittedly *bona fide* and due at the time of the execution of the mortgage, in a suit by other creditors of the husband to set aside the deed as fraudulent for the purpose of delaying or defeating the collection of their debt, there is nothing in the transaction to raise a presumption of fraud, and the burden of proof is on the plaintiff to establish it.

3. Deeds and Conveyances—Mortgages—Husband and Wife—Debt, Bona Fide — Fraud — Evidence — Instructions — Questions for Jury.

In an action by the creditors to set aside a mortgage given by the husband to his wife to secure a debt admittedly due at the time of its execution, it is for the jury to find, upon the evidence, the actual intent of the husband to defraud his other creditors,

and whether the wife knew or had notice thereof, or acted in good faith in the transaction; and it is no error for the trial court to instruct the jury to answer the issue of fraud in the negative if they found that the wife acted in good faith, without knowledge of the husband's wrongful intent.

APPEAL by plaintiff from *Ferguson, J.,* at August Term, 1909, of CHEROKEE.

The facts are stated in the opinion of the Court.

*Dillard & Bell* for plaintiff.
*Ben Posey* for defendant.

WALKER, J. This action was brought by the plaintiffs to set aside a mortgage executed on 16 February, 1907, by the defendant L. M. Eubanks, to his wife, Fannie D. Eubanks, and to Hattie Swaggerty, his sister-in-law, and J. L. Robinson, to secure the payment of certain debts alleged therein to be due by L. M. Eubanks to the mortgagees. The court submitted issues to the jury which, with the answers thereto, are as follows:

1. Is the defendant L. M. Eubanks indebted to Sanford, Chamberlain & Albers Company; if so, in what sum? Answer: $535.35, with interest from 1 April, 1907, and $4.65.

2. Is said defendant indebted to Briggs & Cooper Company, Ltd.; if so, in what sum? Answer: $217.52.

3. Was the mortgage of 17 February, 1909, from L. M. Eubanks to Fannie D. Eubanks and others executed with intent to hinder, delay and defeat the creditors of said L. M. Eubanks? Answer: Yes.

4. Did the defendant Fannie D. Eubanks know of any fraudulent intent on the part of said L. M. Eubanks at the time of the execution and delivery of said mortgage to her? Answer: No.

5. Did the defendant Hattie Swaggerty know of such intent at said time? Answer: No.

The allegation of the plaintiff is that the mortgage was executed to defraud the creditors of the mortgagor. There was no dispute at the trial as to the indebtedness of L. M. Eubanks to the plaintiffs. The mortgagor was largely indebted to his wife for money which she loaned him in the amount of $1,000, and further in the sum of $2,500, for money which he had obtained by mortgage on her separate estate. It was admitted that L. M. Eubanks was insolvent at the time he executed the mortgage. There was some evidence tending to show that the mortgage was made with a fraudulent intent, and the question really involved in the case was whether Fannie D. Eubanks,

the wife of the mortgagor, had notice at the time he executed the mortgage to her and the others named therein, of such fraudulent intent. She was asked by her counsel the following question: "Did you, at the time you took this mortgage from your husband, have any intention to defraud any of your husband's other creditors?" The plaintiffs objected to this question; the objection was overruled and the plaintiffs excepted. The witness answered that she did not intend to defraud any of her husband's creditors. Her own testimony tended to show that the mortgage was taken by her in good faith and without notice of the fraudulent intent of her husband.

The plaintiffs requested the court to charge the jury as follows: "The defendant Fannie D. Eubanks need not have known, as a matter of law, that the mortgage executed to her was fraudulent, but it was sufficient if she knew of the circumstances which the law says made the deed fraudulent on the part of her husband, if it was so, and if the jury should find that she knew the circumstances and the deed was fraudulent, they should answer the fourth issue 'Yes,' that is, in favor of the plaintiffs." The court declined to give this instruction, and the defendants again excepted.

The court charged the jury that if the mortgage was made with a fraudulent intent, that is, with an intent on the part of L. M. Eubanks to hinder, delay or defeat his creditors, or any of them, in the collection of their claims, and the wife of the mortgagor, Fannie D. Eubanks, knew of this intent, they would answer the fourth issue "Yes"; but if the jury found as a fact that she did not know of such intent, if it existed, but merely knew that he was indebted to other persons than those secured by the mortgage, and that his purpose in executing the same was merely to secure the payment of the indebtedness to her, and that was his only purpose when he executed the mortgage, and she did not know that he intended to hinder, delay or defeat any of his creditors in the collection of their claims against him, they would answer the fourth issue "No." In other words, the court substantially charged the jury that if Fannie D. Eubanks, the wife of the mortgagor, believed the transaction to be an honest one and did not know that there was any actual intent on the part of her husband to defraud any of his other creditors, as defined by the court, and she acted in good faith in taking the mortgage to secure the indebtedness to her, they would answer the fourth issue "No." The plaintiffs assigned the following errors:

SANFORD *v.* EUBANKS.

1. That the court permitted the defendant Fannie D. Eubanks to testify, over the objection of the plaintiffs, that she had no intention to defraud any of the other creditors of her husband at the time the mortgage was executed to her.

2. That the court refused to give the instruction as requested by the plaintiffs.

3. That the court charged the jury that the defendant Fannie D. Eubanks must have had knowledge of the fraudulent intent of the mortgagor, and not merely notice of the fraud.

As to the first assignment of error, we are unable to see why it was not competent and relevant for the witness, Fannie D. Eubanks, to testify as to what her intention was at the time the mortgage was executed to her. It cannot be denied that the mortgage would be valid· in her hands as against the creditors of her husband, even if he had a fraudulent intent, provided she did not have notice of it or did not participate in the fraudulent execution of the mortgage, and this being one of the questions involved in the case, how can the fact better be proved than by her own testimony as to what her intention was at the time?

But the questions involved in the case were, whether her husband had the fraudulent intent, and whether she had notice of it. In this aspect of the case her intention was either irrelevant and the testimony was, therefore, harmless, or, if relevant, as tending to ʼshow that she did not have any knowledge or notice of her husband's unlawful purpose, it surely would be competent to prove by her what her intention was, for it might be said, if her husband executed the mortgage with a fraudulent intent, and she·executed it knowing, or having notice, of such intent, she in a legal sense intended to defraud her husband's other creditors, as she would then be participating in the fraud. If it is competent to inquire whether or not she had a fraudulent intent at the time she executed the mortgage, the fact that she did not have such an intent could be proved by her own testimony, as we held in the case of *Phifer v. Erwin,* 100 N. C., 59. In that case *Chief Justice Smith,* speaking for .the Court, said: "The test of the admissibility of the evidence of motive or intent is the materiality of the motive or intent in giving character to the act, and when they must, as separate elements, coexist to constitute guilt or produce a legal· result. When as distinct facts, each must be alleged and proved, the inference to be deduced may be met and repelled by the direct testimony of the party as to their being entertained by him," citing *S. v. King,* 86 N. C., 603, and 1 Wharton Ev., sec.

482. In that case the question involved was whether or not the mortgage was fraudulent, and the decision seems to be a direct authority for the ruling of the court upon the objection we are now discussing.

As to the second assignment of error, we are of the opinion, after a careful perusal of the charge of the court, that the instruction was substantially given to the jury. If it was not given, there were no circumstances from which the jury could infer fraud in law. The plaintiff submitted to a nonsuit as to Hattie Swaggerty and J. L. Robinson, the other defendants, and the issue was confined, therefore, to the validity of the mortgage as to Fannie D. Eubanks. The court properly submitted the case to the jury as involving the above questions of fact, as to whether the mortgagor had an actual intent to defraud his creditors and whether his wife had notice or knowledge of such intent. The plaintiff having admitted that the debt secured by the mortgage was justly due to Fannie D. Eubanks by her husband, the burden was upon the plaintiff to show that the mortgage was executed with a fraudulent intent on the part of the debtor. *Peeler v. Peeler,* 109 N. C., 628; *Redmond v. Chandley,* 119 N. C., 575. It is true that where the husband executes a mortgage to secure an alleged indebtedness to his wife, the law casts suspicion upon the transaction and raises what has been called a presumption of fraud; but when she has shown that the debt was honestly contracted and was justly due to her at the time the mortgage was executed, it then becomes a question for the jury, to determine the intent of the parties and to find the contract fraudulent or otherwise, as they may find the fact to be upon a consideration of the testimony, the burden being upon the attacking creditor to show the fraudulent intent of the debtor, if the debt which is secured by the mortgage was actually due to his wife. *Reiger v. Davis,* 67 N. C., 185. If the husband is indebted to his wife and executes the mortgage to secure such indebtedness, and the wife acts in good faith and without knowledge of any fraudulent intent on his part, if he had any, we do not see why the husband may not prefer his wife as one of his creditors, as well as any of his other creditors. The case in this respect seems to have been correctly and fairly tried in accordance with the decisions which we have just cited.

The third objection to the judge's charge is clearly untenable. If the husband had a fraudulent intent, the wife must have knowledge of it to invalidate the deed or mortgage as to her. This is decided in *Peeler v. Peeler, supra,* and the other cases

COORE *v.* RAILROAD.

above cited, but the court, in its charge to the jury, evidently used the word "knowledge" in the sense of "notice."

We have examined the case carefully, and find no error in the rulings of the court.

No error.