**IN RE D.Q.W., T.A.W., Q.K.T., Q.M.T., & J.K.M.T.**

[167 N.C. App. 38 (2004)]

━━━━━━━━━━━━━━

IN RE: D.Q.W., T.A.W., Q.K.T., Q.M.T., & J.K.M.T.

No. COA04-412

(Filed 16 November 2004)

**1. Trials— motion for continuance—failure to support motion**

The trial court did not abuse its discretion in a termination of parental rights proceeding by denying respondent father's motion for a continuance, because: (1) respondent failed to explain why his counsel had inadequate time to prepare for the hearing, what specifically his counsel hoped to accomplish during the continuance, or even how much additional time was requested; and (2) the record does not include the trial transcript or the continuance motion, and therefore, the Court of Appeals was unable to determine the nature of the reasons proffered at the hearing in support of respondent's continuance motion.

**2. Termination of Parental Rights— motion to dismiss appeal—failure to serve copy of affidavit of indigency**

The trial court did not err in a termination of parental rights case by denying cross-appellant Department of Human Service's motion to dismiss respondent father's appeal based on respondent's failure to serve a copy of the affidavit of indigency executed by respondent for determination of his eligibility for appointed counsel, because: (1) an affidavit of indigency submitted to determine eligibility for appointed counsel in termination of parental rights proceedings is generally executed pursuant to N.C.G.S. § 7A-450 et seq. instead of N.C.G.S. § 1-288; (2) neither N.C.G.S. § 7A-450 nor our Rules of Appellate Procedure require a respondent to serve an affidavit of indigency on opposing coun-

IN RE D.Q.W., T.A.W., Q.K.T., Q.M.T., & J.K.M.T.

[167 N.C. App. 38 (2004)]

sel; (3) unless pertinent to an issue in the case, the affidavit of indigency need not be included in the record on appeal; and (4) failure to comply with the service requirements of N.C. R. App. P. 26 does not deprive the Court of Appeals of jurisdiction or require automatic dismissal of a respondent's appeal.

Appeal by respondent from order entered 18 September 2003 by Judge Monica M. Bousman in Wake County District Court. Heard in the Court of Appeals 23 September 2004.

*Wake County Attorney's Office, by Juanita B. Hart and Corinne G. Russell, for appellee.*

*Michael J. Reece for appellant.*

*Gregory Ramage, Guardian Ad Litem.*

LEVINSON, Judge.

Respondent (Quillon Thorpe) appeals from an order terminating his parental rights in his daughters, Q.K.T., Q.M.T., and J.M.T. Cross-appellant Wake County Department of Human Services appeals from the denial of its motion to dismiss respondent's appeal.

The minor children were born July 1998, February 2000, and February 2001. On 24 May 2002 petitioner Wake County Department of Human Services (Wake County) filed a petition alleging that the children were neglected and dependent as defined by N.C.G.S. § 7B-101(9) and (15). A nonsecure custody order was entered on 28 May 2002, and the children were placed in the custody of Wake County. On 5 September 2002 an order was entered adjudicating the children neglected and dependent and continuing custody with Wake County. The minor children's mother identified respondent as their father; however, as of the time of the hearing on the petition alleging neglect and dependency, paternity had not been determined. DNA testing subsequently established that respondent is the biological father of the girls. After paternity was established, respondent initially requested visitation with the children, but then refused to cooperate with the random drug screen tests that were a condition of visitation. The record shows that respondent neither visited, nor provided financial or other support, during the time his children were in Wake County's custody. A permanency planning hearing was conducted on 15 April 2003, when the minor children had been in foster care almost a year. At the permanency planning hearing, the trial

**IN RE D.Q.W., T.A.W., Q.K.T., Q.M.T., & J.K.M.T.**

[167 N.C. App. 38 (2004)]

court determined that further efforts at reunification would be futile, and directed Wake County to initiate proceedings for termination of parental rights.

On 18 June 2003 Wake County filed a petition for termination of respondent's parental rights. Respondent was served with a copy of this petition at his last known address, and again by publication. In August 2003 Wake County learned that respondent was incarcerated in the Wake County jail, and he was served personally with the petition on 5 August 2004. On the same date respondent executed an affidavit of indigency (form AOC-CR-226 (Rev. 6/97)), and counsel was appointed on the same day. On 6 August 2003 his trial counsel was notified by mail that the termination of parental rights hearing was scheduled for three weeks later, on 27 August 2003. The termination hearing was held on that date, as scheduled. On 18 September 2003 the trial court issued an order terminating respondent's parental rights in the minor children. From this order respondent appeals.

[1] Respondent presents a single argument on appeal, in which he asserts that the trial court committed reversible error by denying his motion for a continuance. We disagree.

In the introduction to its order the trial court states:

[Defense counsel] made a motion to continue the hearing on behalf of [respondent] to allow additional time for preparation. After hearing arguments from the parties, the motion to continue was denied.

Defendant failed to include in the record either his motion to continue or a transcript of the proceedings. Accordingly, our review of the court's ruling is based on the trial court's statement and on other record evidence.

"Ordinarily, a motion to continue is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review." *State v. Taylor*, 354 N.C. 28, 33, 550 S.E.2d 141, 146 (2001) (citing *State v. Searles*, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981)). " 'Continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. The chief consideration is whether granting or denying a continuance will further substantial justice.' " *In re Humphrey*, 156 N.C. App. 533, 538, 577 S.E.2d 421, 425 (2003) (quoting *Doby v. Lowder*, 72 N.C. App. 22, 24, 324 S.E.2d 26, 28 (1984)). "However, if

**IN RE D.Q.W., T.A.W., Q.K.T., Q.M.T., & J.K.M.T.**

[167 N.C. App. 38 (2004)]

'a motion to continue is based on a constitutional right, then the motion presents a question of law which is fully reviewable on appeal.' " *State v. Jones*, 342 N.C. 523, 530-31, 467 S.E.2d 12, 17 (1996) (quoting *State v. Covington*, 317 N.C. 127, 129, 343 S.E.2d 524, 526 (1986)).

Although respondent argues on appeal that the trial court's denial of his continuance motion implicates his due process right to effective assistance of counsel, his continuance motion is not in the record, so there is no way to know if the original motion was based on constitutional grounds. However, even assuming, *arguendo*, that respondent's continuance motion was based on a constitutional right, respondent nonetheless failed to show prejudice:

> To establish that the trial court's failure to give additional time to prepare constituted a constitutional violation, defendant must show "how his case would have been better prepared had the continuance been granted or that he was materially prejudiced by the denial of his motion." "[A] motion for a continuance should be supported by an affidavit showing sufficient grounds for the continuance." " '[A] postponement is proper if there is a belief that material evidence will come to light and such belief is reasonably grounded on known facts."

*State v. McCullers*, 341 N.C. 19, 31-32, 460 S.E.2d 163, 170 (1995) (quoting *State v. Covington*, 317 N.C. 127, 130, 343 S.E.2d 524, 526 (1986); *State v. Kuplen*, 316 N.C. 387, 403, 343 S.E.2d 793, 802 (1986); and *State v. Tolley*, 290 N.C. 349, 357, 226 S.E.2d 353, 362 (1976) (other citation omitted)).

Respondent has cited general authority for his right to due process and the effective assistance of counsel, guaranteed under the United States and North Carolina Constitutions. However, he does not explain why his counsel had inadequate time to prepare for the hearing; what specifically his counsel hoped to accomplish during the continuance; or even how much additional time was requested. For example, although respondent asserts that he was unable to meet with counsel until the night before the hearing, the record is uncontradicted that counsel was appointed three weeks before the hearing. Respondent offers no explanation for his counsel's failure to interview him in the Wake County jail until the day before the hearing. Nor does he indicate with any specificity in what way his preparation would have been more complete had the continuance motion been granted. Instead, respondent concedes that "there is no way of know-

ing how Respondent Thorpe's counsel might have performed had he had adequate time."

Moreover, "numerous factors . . . are weighed to determine whether the failure to grant a continuance rises to constitutional dimensions. Of particular importance are the reasons for the requested continuance presented to the trial judge at the time the request is denied." *State v. Roper*, 328 N.C. 337, 349, 402 S.E.2d 600, 607 (1991) (citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 11 L. Ed. 2d 921, 931 (1964)). As noted above, the record does not include the trial transcript or the continuance motion. We are, therefore, unable to determine the nature of the reasons proffered at the hearing in support of his continuance motion.

On this record we are unable to conclude that the trial court abused its discretion in denying respondent's motion to continue, or that the denial of respondent's continuance motion resulted in a denial of respondent's constitutional rights. This assignment of error is overruled.

### Appellee's Cross Appeal

[2] The cross-appellant, Wake County Human Services, appeals the trial court's denial of its motion to dismiss respondent's appeal. Cross-appellant argues that respondent was required to serve on it a copy of the affidavit of indigency executed by respondent for determination of his eligibility for appointed counsel. Cross-appellant does not argue that it was prejudiced by the failure of respondent to serve a copy of the affidavit. Instead, cross-appellant contends that respondent's failure to serve a copy of the affidavit of indigency deprives this Court of jurisdiction, and requires dismissal of respondent's appeal. We disagree for several reasons.

First, cross-appellant's argument is based on the erroneous premise that "entitlement of [respondent] to appeal as an indigent is controlled by N.C.G.S. § 1-288[.]" We conclude that, on the facts of this case, respondent's status as an indigent was not determined or governed by this statute. N.C.G.S. § 1-288 (2003) provides in part that:

> When any party to a civil action . . . desires an appeal from the judgment rendered in the action to the Appellate Division, and is unable, by reason of poverty, to make the deposit or to give the security required by law for the appeal . . . [t]he party desiring to appeal . . . shall, within 30 days after the entry of the judgment or

order, make affidavit that he or she is unable by reason of poverty to give the security required by law. . . .

G.S. § 1-288 is a broad statute addressing the general right of "any party to a civil action" to pursue an appeal as an indigent. Thus the statute could theoretically, in appropriate factual circumstances, apply to an appellant from a termination of parental rights proceeding.

However, in the instant case, as in the vast majority of termination of parental rights appeals, respondent sought appointed counsel at the hearing and on appeal. Accordingly, the determination of his indigency was governed by N.C.G.S. § 7A-450 (2003), *et seq.* Section 7A-450 (a) states that an "indigent person is a person who is financially unable to secure legal representation and to provide all other necessary expenses of representation in an action or proceeding enumerated in this Subchapter." G.S. § 7A-450, *et seq.* deals specifically with the determination of indigency of a termination of parental rights respondent seeking appointed counsel, while G.S. § 1-288 addresses general procedures for indigent appeals in civil cases. "Where one of two statutes might apply to the same situation, the statute which deals more directly and specifically with the situation controls over the statute of more general applicability." *Trustees of Rowan Tech. v. Hammond Assoc.*, 313 N.C. 230, 238, 328 S.E.2d 274, 279 (1985) (citations omitted). We conclude that where, as in the instant case, the respondent seeks appointed counsel, procedures for determining indigency are governed by G.S. § 7A-450, *et seq.* This conclusion is further bolstered by N.C.R. App. P. 12, which acknowledges that certain indigent appeals are governed by G.S. § 7A-450, *et seq.* *See* N.C.R. App. P. 12(b) ("If an appellant is authorized to appeal *in forma pauperis* as provided in G.S. 1-288 or 7A-450 *et seq.,* . . .").

Secondly, the record does not indicate any reason why this respondent would be required to execute, in addition to the original affidavit of indigency executed 5 August 2003, another affidavit subsequent to the conclusion of the termination of parental rights hearing to satisfy the terms of G.S. § 7A-450, *et seq.* Under N.C.G.S. § 7A-451(a)(14) (2003), "[a]n indigent person is entitled to services of counsel in the following actions and proceedings . . . (14) [a] proceeding to terminate parental rights[.]" Further, N.C.G.S. § 7A-451(b)(6) (2003) provides that

(b) In each of the actions and proceedings enumerated in subsection (a) . . . entitlement to the services of counsel begins as

soon as feasible after . . . service is made upon [the indigent] of the . . . petition, notice or other initiating process. **Entitlement continues** through any critical stage of the action or proceeding, including, if applicable: . . .

> (6) Review of any judgment or decree pursuant to G.S. 7A-27[.]

(emphasis added). Thus, N.C.G.S. § 7A-451(6) (2003) expressly states that entitlement to counsel **continues** during appeal, and does not require execution of a new affidavit of indigency on appeal in every case. Of course, the "question of indigency may be . . . redetermined by the court at any stage of the action or proceeding at which an indigent is entitled to representation." N.C.G.S. § 7A-450(c) (2003). Accordingly, the court always has authority to re-examine the issue of a respondent's entitlement to appellate counsel if it becomes appropriate to do so. However, in a termination of parental rights proceeding, determination of a respondent's indigency is made before the hearing when counsel is appointed. Absent a determination by the court that the issue of indigency should be redetermined, the respondent's entitlement to counsel continues on appeal, without the necessity of a new affidavit of indigency.

We also disagree with cross-appellant's assertion that N.C.R. App. P. 26 required respondent to serve his affidavit of indigency on all parties. N.C.R. App. P. 26 provides in relevant part that:

> [(a)] Papers **required or permitted by these rules** to be filed in the trial or appellate divisions shall be filed with the clerk of the appropriate court. . . .

> [(b)] Service of all papers required. Copies of all papers filed by any party and not required by these rules to be served by the clerk shall, at or before the time of filing, be served on all other parties to the appeal.

N.C.R. App. P. 26(a) and (b) (emphasis added). Rule 26 is clearly intended to address papers filed during appeal—documents "required or permitted" by the North Carolina Rules of Appellate Procedure to be filed. An affidavit of indigency, executed pursuant to G.S. § 7A-450 and used by the trial court to determine a respondent's right to appointed counsel at a termination of parental rights hearing, is not a document filed pursuant to the Rules of Appellate Procedure. Therefore, such an affidavit of indigency is not within the purview of Rule 26.

In addition, the North Carolina Rules of Appellate Procedure do not even require this respondent to include the affidavit of indigency in his record on appeal. N.C.R. App. P. 9(a), "Function; Composition of Record," provides, in pertinent part, that the record on appeal must contain:

> i. a copy of the notice of appeal, of all orders establishing time limits relative to the perfecting of the appeal, [and] of any order finding a party to the appeal to be a civil pauper[.]

> j. copies of all other papers filed and statements of all other proceedings had in the trial court which are necessary to an understanding of all errors assigned[.]

N.C.R. App. P. 9(a)(i) and (j). Thus, where the facts in a specific case render the affidavit of indigency "necessary to an understanding of all errors assigned," it should be included in the record, pursuant to Rule 9(a)(j). However, Rule 9 does not include a general requirement that every record on appeal include the affidavit of indigency. Indeed, N.C.R. App. P. 9(b)(2) emphasizes that "[i]t shall be the duty of counsel for all parties to an appeal to avoid including in the record on appeal matter not necessary for an understanding of the errors assigned[.]"

Finally, we disagree with cross-appellant that the failure to serve the affidavit of indigency deprives this Court of jurisdiction. As discussed above, we conclude respondent is not required to serve copies of an affidavit of indigency that is executed pursuant to G.S. § 7A-450, *et seq.* Moreover, even assuming, *arguendo*, that respondent were required to serve a copy of the G.S. § 7A-450 affidavit of indigency, the failure to do so would not be jurisdictional. *See* N.C.R. App. P. 1(b) ("These rules shall not be construed to extend or limit the jurisdiction of the courts of the appellate division as that is established by law.").

Nor are the cases cited by cross-appellant controlling on this issue. In *In re Shields*, 68 N.C. App. 561, 315 S.E.2d 797 (1984), the respondent's appeal was dismissed for failure to **file**, not serve, an affidavit of indigency, which affidavit was executed pursuant to G.S. § 1-288, not G.S. § 7A-450. The opinion in *In re Caldwell*, 75 N.C. App. 299, 330 S.E.2d 513 (1985), addresses the effect of **late** filing of an affidavit of indigency that also was filed under G.S. § 1-288, rather than G.S. § 7A-450. Neither of these cases involve an affidavit of indigency executed in conjunction with the right to appointed counsel;

**IN RE D.Q.W., T.A.W., Q.K.T., Q.M.T., & J.K.M.T.**

[167 N.C. App. 38 (2004)]

nor do they address the failure to serve a properly filed affidavit of indigency on an opposing party. Moreover, in *Henlajon, Inc. v. Branch Highways, Inc.*, 149 N.C. App. 329, 560 S.E.2d 598 (2002), this Court expressly **rejected** the argument that the requirements of Rule 26 are jurisdictional:

> Failure to serve the notice of appeal on or before the date of filing pursuant to Rule 26(b) does not automatically mandate dismissal. . . . Any suggestion [in an earlier case] that Rule 26(b) or (c) [requirements are] jurisdictional was unnecessary to decide that case [and is obiter dicta]. . . .
>
> We hold that . . . failure to serve the notice of appeal "at or before the time of filing" is not a jurisdictional requirement that automatically requires dismissal.

*Id.* at 333-34, 560 S.E.2d at 602.

In sum, we conclude that (1) an affidavit of indigency submitted to determine eligibility for appointed counsel in termination of parental rights proceedings is generally executed pursuant to N.C.G.S. § 7A-450, *et seq.*, and not G.S. § 1-288; (2) neither G.S. § 7A-450 nor our Rules of Appellate Procedure require a respondent to serve an affidavit of indigency on opposing counsel; (3) unless pertinent to an issue in the case, the affidavit of indigency need not be included in the record on appeal; and (4) failure to comply with the service requirements of Rule 26 does not deprive this Court of jurisdiction, nor require automatic dismissal of a respondent's appeal. This assignment of error is overruled.

For the reasons set out above, we affirm both the trial court's order for termination of parental rights and its denial of cross-appellant's motion for dismissal of respondent's appeal.

Affirmed.

Judges TYSON and BRYANT concur.